GASQUET ET AL. *vs.* DIMITRY.

ON A RE-HEARING.

Where the wife renounces her right of mortgage in favor of her husband's creditor, as a security for a debt of his contracting, she thereby becomes his security, and does indirectly that which she is positively forbidden by law to do directly.

The wife may sell or enter into the contract of mortgage, in relation to her dotal or paraphernal effects and rights, with her husband's consent, but such contracts must be for her benefit, or that of her and her husband.

It is not of the essence of suretyship, that the obligations of the principal and surety should be co-extensive. If the wife renounce her right of mortgage, and cede it in favor of her husband's creditor, she becomes surety for a debt of her husband's contracting, so far as her interest in the mortgaged property is concerned.

The *Senatus consultum Velleianum* of the Roman law, is the fountain of our legislation, in relation to the rights of married women. As relates to mortgages and sales, the *Senatus consultum* gave the wife, who had pledged her own property to a creditor of her husband, the right to recover it back, although it had been sold by the creditor.

In this case a re-hearing was applied for, and obtained.

*Benjamin,* for the plaintiffs and appellees, made the following points:

1. The instrument termed *declaratoria de dote,* on which the wife rests her pretensions and claims to a mortgage, was executed in 1803, under the Spanish laws, and must be tested by them. The common principle running through both the Spanish laws and our codes is, that to constitute dotal property, it must be expressly stipulated or constituted as such in a marriage contract between the spouses, either before or at the time of marriage. Without such contract and express stipulation, all the property of the

wife, whether present or future, is extra-dotal or paraphernal. *Civil Code*, 326, *article* 16, *et seq.* *Louisiana Code*, 2317, *et seq.* These articles of the codes are but a re-enactment of the Spanish law. See *Curia Phillippica, lib.* 2, *comercio terrestre, cap.* 12, *prelacion, No.* 35. *Perez y Lopez, Teatro de legislacion, vol.* 11, 265, *verbo Dotes.*

2. If the rights of the wife, in this case, are paraphernal, as is shown, in order to have effect against third persons, her mortgage for the restitution of her paraphernal property must be recorded. See *Louisiana Code, article* 3297.

3. The article 3298, declares that the mortgage of the wife, on the property of her husband for her dotal rights, exists without being recorded. The article 3303, in speaking of the husband's obligation to record his wife's mortgage, mentions only her *dower,* evidently contemplating that as she has control of her paraphernal rights, she must herself cause them to be inscribed, in order to bind third persons. All *legal* and conventional mortgages must be recorded, in order to bind third persons. *Louisiana Code, articles* 3314, 3317.

4. The wife may, with her husband's consent, alienate her paraphernal property, and this even by gratuitous title : *a fortiori* may she alienate, renounce or relinquish the mortgage given by law, to secure that property. *Louisiana Code,* 2367, 1467.

5. The judgment of the court is based on the article 2412, of the Louisiana Code, which prohibits the wife from binding herbelf in any manner, with, or for her husband, and for debts of his contracting. She has not bound herself for a debt of her husband in this case. She has simply renounced a mortgage on his property, not contracted on obligation as the article of the code contemplates.

6. It is expressly provided, that individuals may, in *all* cases renounce what the law has established in their favor, when such renunciation does not affect the rights of others, and is not contrary to the public good : and the wife's incapacity is removed by the authorisation of her husband. *Louisiana Code, article* 11, 1779.

7. The renunciation of the wife is an alienation absolute· or conditional of a real right, in favor of a third person by gratuitous title ; and she is authorised to make this alienation with the consent of her husband. *Louisiana Code*, 1467.

8. The law which gives the legal mortgage to the wife, for the security of her dotal or paraphernal property, is not one made for the preservation of public order and good morals, but only such as are of a penal nature, and enforce moral duties, such as treat of domestic authority of the heads of families and education of children, &c. ; and not such as touch on the rights of property in the relation of husband or wife.

9. The article 2337 and following, prohibit the alienation of immoveables settled as dowry. These and the article 2412, are the only ones which restrict the wife's capacity to· contract with third persons when authorised by her husband. The negative of these articles is pregnant with the affirmative, that she is capable of contracting and alienating all other rights. Paraphernal immoveables may be alienated, and she may make donations *inter vivos*. From all which, it is respectfully asked that the court reconsider and change its judgment.

*D. Seghers*, on the same side.

1. The appellants respectfully call the attention of the court to a single point : whether the law at the time of the renunciation, or that in force at the date of the marriage, is to govern ?

2. The court seem to have correctly adopted the laws in force when the marriage was contracted, when they say it is unnecessary to inquire whether the claim of the wife is dotal or paraphernal, as both were equally· secured by tacit mortgage on the property of the husband. ' *Partida* 4, 11, 17.

3. According to the laws then in force, the wife had the capacity to renounce her general mortgage, and accept a special mortgage, that her husband might be better enabled to carry on his commercial and financial business. But if the article 2412 of the Louisiana Code is to be applied to this

marriage, entered into before its adoption, it will have a retrospective effect, and impair a clause in the marriage contract, without which the husband might have declined contracting. *Napoleon Code*, 1554. *Sirey, Code annoté* on this article, *Nos*. 1, 27. *Merlin, Question du Droit, vol.* 12, *page* 329, *verbo Régime dotal, section* 2, *and pages* 332, 333.

4. The question, whether the renunciation made by the wife of her tacit mortgage on her husband's property, for the restitution of her dotal and paraphernal effects, *is binding on her*, under the Spanish law, has been solemnly decided and put at rest by this court, in the case of Tremé *vs*. Lanaux, 4 *Martin, N. S.*, 230.

5. The whole doctrine which should govern the present case, was reviewed in the above decision, and settled in favor of the right of the wife to renounce. Mrs. Dimitry was married while the Spanish law was in force. Her rights and capacity must be governed by that law, as far as her dotal and paraphernal interests and claims are concerned, and not by the Louisiana Code as it stands since the repealing act of 1828, when all the civil laws were abrogated. See *Merlin's Répertoire, vol.* 26, *pages* 16 *and* 17, *verbo Puissance Maritale.* 4 *Louisiana Reports*, 191.

*Conrad,* for plaintiffs, contended, that this case should be decided by the provisions of the laws in force when the marriage was contracted, which is viewed merely as a civil contract. Viewed in this light, no subsequent legislation could vary or impair its obligatory effect. *Louisiana Code,* 87. *Constitution of the United States, article* 1, *section* 10.

2. The legislature has nowhere said that the provisions of the Louisiana Code shall apply to marriages entered into before its adoption. The code itself says: " A law can only prescribe for the future ; it can have no retrospective operation." *Louisiana Code,* 8. *Merlin's Répertoire de Jurisprudence, verbo Puissance Maritale, sec.* 2 *et seq. Questions du Droit, verbo Régime dotal, sec.* 1, *No.* 1.

3. It is a general principle that married women may contract with the consent of their husbands in all cases where

Eastern Dist.
June, 1836.

GASQUET ET AL.
vs.
DIMITRY.

other persons are permitted to contract, unless they are especially prohibited. It is also a legal axiom that any one may renounce a provision of law intended for his benefit, unless such renunciation is expressly or impliedly forbidden. The right of mortgage of the wife is intended for her exclusive benefit, and no law is to be found which expressly or impliedly forbids her to renounce it in favor of whom she pleases. See *Louisiana Code, article* 11, 1775 *and* 1779.

4. The simple question to be solved, is, does a renunciation by a wife of her right of mortgage in favor of a creditor of the husband, make her the surety of the latter? Suretyship is defined to be an agreement by which a person binds himself for another who is already bound, and *agrees with the creditor to satisfy the obligation,* if the debtor does not. *Louisiana Code,* 3004.

5. In the case before us, the wife does not bind herself; she incurs no obligation, and the creditor of her husband acquires no claim against her. In no possible contingency, can she be made liable for her husband's debt. We contend, therefore, that a wife, by renouncing her mortgage in favor of a creditor of her husband, does not, directly or indirectly, become bound, either as surety, or otherwise, for her husband.

*Mr. Conrad* then argued at considerable length to show that the capacity of the wife to renounce her right of mortgage, was not in derogation of a public law, and not contrary to good morals and public policy.

*J. Seghers,* for the plaintiffs, added the following points and authorities. He contended that there was no proof that the money mentioned in the *declaratoria de dote,* was counted or paid down to the wife, at the time, which was necessary to constitute a *dot,* or *dowry.* 7 *Martin, N. S.* 460. 8 *Ibid.* 459. 1 *Louisiana Reports,* 373. 4 *Ibid.* 422.

2. If the payment of the money is not proven contradictorily with the creditors, the wife has no claim to the preference, as there is, with regard to them, neither privilege nor mortgage. *Febrero Ad., vol.* 4, *part* 2, *lib.* 3, *cap.* 3, *sec.* 2, *Nos.* 132 *and* 136.

*Canon,* for the appellee, Madame Dimitry.

EASTERN DIST.
June, 1836.

GASQUET ET AL.
vs.
DIMITRY.

1. The court has well said in its judgment, that by the Spanish laws *dotal* and paraphernal effects are both equally secured to the wife by a tacit mortgage on the property of her husband. This law must govern in relation to the rights of the wife under the instrument called *declaratoria de dote.*

2. As regards the dowry or donation which the husband gives to the wife, or the wife to her husband, they may be made *before* or *after* the marriage is contracted. *Partida* 4, 11, 1.

3. All the things called paraphernal, enjoy the same privilege as the dowry itself, in the same manner as the estate of the husband is bound to the wife, where he alienates or dissipates her dowry. *Ibid.* 4, 11, 17.

4. The customs or laws of the country and those in force at the time of contracting the marriage, must govern as regards the dowry, &c. *Ibid.* 4, 11, 24.

5. The law of the *Partidas* cited in the last point, is also the doctrine of the French writers on the civil law, because such are real rights which attach to the real property of the husband, which binds in whatever hands it may come.

6. The renunciation of the wife, must it be governed by the laws in force at the time of the marriage, or when it was made? We contend that in this case the Louisiana Code, adopted in 1825, must govern. But if even the former, *i. e.* the Spanish law, was to prevail, Mrs. Dimitry's renunciation would be null; for the law was not explained, and it was not made according to the forms of the Spanish law. 4 *Martin, N. S.*, 230. *Partida* 3, 18, 58.

7. But the case of Tremé *vs.* Lanaux's syndics, 4 *Martin, N. S.*, 230, is not applicable to this case. The renunciation of Mrs. Lanaux there discussed, was made in 1823, before the adoption of the Louisiana Code.

8. The article 2412 of the *Louisiana Code* is conclusive in this case, and it positively prohibits the wife from becoming security for her husband and his debts, or binding herself in any way for him. This article repeals former laws contrary to it, or irreconcilable with it. It is not retrospective or retroactive, but makes positive provisions in relation to future

acts and transactions. *Louisiana Code*, 23, 2412. See *Merlin, Dictionnaire de Jurisprudence, verbo Effet retroactif. Paillet, Droit Manuel Français,* note to article 2.

9. The legislature intended in the provision of article 2412, in times of extravagant speculation, like the present, to protect married women from ruin, and to save them and their families from beggary and destruction.

A re-hearing of the case was allowed as prayed for, and it was argued at the bar by counsel on both sides.

*Benjamin,* for the plaintiffs, submitted the following points and authorities on the final hearing :

Mrs. Dimitry cannot succeed in this cause without maintaining each one of the following propositions :

1st. That the instrument called *declaratoria de dote* is such as to entitle her to a legal mortgage on the property in question.

2d. That this mortgage affects third persons without being recorded.

3d. That the renunciation of this mortgage was invalid, and not legally binding on her.

The plaintiffs controvert each one of these positions on the following grounds and authorities :

1. The instrument in question gives no mortgage whatever, and has no effect against creditors, because it is deemed in law a disguised donation of the husband to the wife. *Acosta de privilegios, page* 161, *No.* 33.

2. If it is at all valid; it confers on her only paraphernal rights. It is not good as a dowry, because dowry can only be constituted by *express* words, *at* or *before* marriage, and not *after. Old Code, page* 326, *article* 16, *et seq., Louisiana Code, article* 2317 *et seq. Curia Phillippica, lib.* 2, *comercio terrestre, cap.* 12, *prelacion, No.* 35. *Perez y Lopez, Teatro de Legislacion, tom.* 11, *page* 265, *verbo Dotes. Curia Phillippica Ilustrada, tom.* 2, *lib.* 2. *Com. Ter. cap.* 12. *Prelacion, No.* 34.

3. She has no mortgage on this property, because it was community property, and she has not renounced the commu-

EASTERN DIST.
June, 1836.

GASQUET ET AL.
vs.
DIMITRY.

nity, and consented to the act under which the property was sold. *Troplong Hypothèques, vol.* 2, *No.* 433, *bis et seq.* and the authors there cited. The mere separation of property is not a renunciation. *Louisiana Code,* 2404. A notarial act is requisite. *Ibid.* 2384.

II. If the mortgage exists at all, it is only for paraphernal rights and required registry to bind third persons. Plaintiffs' mortgage was passed on 26th November, 1832, and as to the wife, bears registry from that date, because she was party to it. Her mortgage was recorded on 30th November, 1833. Plaintiffs have, therefore, the priority. *Session Acts,* 1813, *page* 208. *Louisiana Code,* 3297—8 *and* 3303—14—17. *Paillet on article* 2135, *arrêt de la Cour de Riom. Grenier sur hypothèques, vol.* 1, 482, and the decisions there cited.

Those French writers who hold the contrary doctrine, base their opinions on certain articles and expressions in the French Code, which are purposely omitted or changed, in the Louisiana Code.

III. The renunciation was valid, and binding on the wife. The cause must be decided according to the law in force at the time the marriage was contracted. If decided by those laws, the case is settled in our favor by the judgment in Tremé *vs.* Lanaux, 4 *Martin, N. S.* 230.

2. If the cause be decided under the laws now in force, the judgment must still be for plaintiff. *Civil Code, article* 11. The wife's renunciation does not come within the exceptions of that act. See *Louisiana Code,* 2305, 2306—7. *Toullier vol.* 1, *No.* 111. *Ibid. vol.* 12, *No.* 13. *Duranton, vol.* 8, *Nos.* 17 *to* 34, *inclusive.*

3. Nor is the wife precluded by article 2412, of the Louisiana Code. This contract is not a suretyship. *Ibid.* 3004. 4 *Martin, N. S.,* 230. She is authorised to alienate paraphernal property with her husband's consent, *Louisiana Code,* 2367; even to make a donation of it, *Ibid.* 1467; and these contracts are, or may be, more onerous than suretyship. Her renunciation is not in the nature of a donation to her husband, because she reserves her personal claim against him, and her mortgage on all other property.

Eastern Dist.
June, 1836.

GASQUET ET AL.
vs.
DIMITRY.

One of the judges dissenting, the opinions were delivered seriatim.

*Mathews, presiding Judge.*

This case has its origin in a rule taken on the defendant, to show cause why a legal mortgage which she holds on the property of her husband, should not be erased from the records of the recorder of mortgages, on the ground that she had relinquished and abandoned in favor of the plaintiffs her right and claim as general mortgagee, on a specific portion of the property of her husband.

The case is now before the court on a re-hearing. In our former decision, two of the judges only took part; the third being at that time interested in the question. That interest having since ceased, he now takes cognizance of the cause, and dissents. When the case was before us on the first hearing, we examined the questions involved in it with great care and deliberation, as being new, and having an important bearing on the transactions of the citizens of the state generally. The cause has been argued much at length on the last hearing, but I am constrained to say, that after giving due and unbiased weight to the arguments, they have not had the effect to change my former opinion, deliberately formed after laborious investigation as may be seen by the judgment already pronounced, by the junior judge of the court.

The question to be solved, arises out of a contract of mortgage made between the husband and the plaintiffs, in which the wife, by his consent, interposed and bound herself to postpone her legal mortgage to that stipulated by her husband, as a security for the payment of a debt by him solely contracted.

A correct decision of the case, depends mainly, if not exclusively, on a just interpretation of the 2412th article of the Louisiana Code. It is expressed in the following terms. "The wife, whether separated in property, by contract or judgment, or not separated, cannot bind herself for her husband, nor even jointly with him, for debts contracted by

him, before or during the marriage." It is true, in the present case, that the wife did not bind herself personally to pay a debt contracted by her husband, but she bound herself to relinquish and transfer to his creditors, and for their benefit, rights vested in her by law, to secure the payment and discharge of a debt contracted by him for his individual benefit. If her contract had extended to all the property of her husband, it would have amounted to a total abandonment of the privileges secured to her by law, relative to her paraphernal property, and in my opinion, contrary to the spirit of the article of the code now under consideration. She could not have become surety for her husband, and the attempt in the present instance, to do indirectly, that which the laws prohibit to be done directly, cannot be tolerated. For, what essential difference is there between a contract which abandons all her rights, and gives them up as security for the payment of the debts contracted by her husband, and becoming surety for him, directly to the amount of these claims and rights? Why should a wife be allowed to yield her inchoate right to property, as security for the debts of her husband, when she is prohibited by law to bind herself in any manner to pay such debts? So long as the legislature think proper to continue in force those prohibitory laws made for the security of married women, to protect them against their weakness in regard to their husbands, and to shield them against the improvident solicitations of the latter, in relation to pecuniary interests, who are too often ill managing, and frequently profligate and unskilful, it is the duty of courts to see that those protecting laws shall not be violated, either directly or indirectly.

It has been argued, that as a wife can sell her property with the consent of her husband, she might well, with his consent, make the less onerous or serious contract of mortgage, and one still less onerous, by which she relinquishes her right of mortgage. Perhaps she may sell her mortgage validly. But such contracts must be presumed to be made for her own benefit, or for the mutual benefit of

76

*Margin notes:*

EASTERN DIST.
*June*, 1836.

GASQUET ET AL.
*vs.*
DIMITRY.

Where the wife renounces her right of mortgage in favor of her husband's creditor, as a security for a debt of his contracting, she thereby becomes his security, and does indirectly that which she is positively forbidden by law to do directly.

The wife may sell, or enter into the contract of mortgage in relation to her dotal or paraphernal effects and rights, with her husband's consent; but such contracts must be for her benefit, or that of her and her husband.

herself and husband, by which she calculates on gain. Yet, admitting these contracts to be completely binding on her, it does not follow as a corollary that she could give her property in payment of the debts of the husband, without being able to rescind the contract, which is a case much more analogous to the present, than either of the two first supposed.

I am, therefore, of opinion, that the former judgment should remain undisturbed.

### Bullard, J.

It is hardly necessary I should say more than that I concur in the opinion just pronounced by the presiding judge. It has always appeared to me, that the only question in the case is, whether the wife, by yielding her precedence to a creditor of the husband, as to the rank of their mortgages, bound herself either directly or indirectly for a debt of her husband's contracting, in the sense of article 2412 of the code; because, if that article be prohibitory, it creates a legal incapacity to contract, and the contract being null, it is admitted on all hands, that she cannot validly renounce; or, in other words, give herself a capacity which the law has denied her.

It cannot be denied that this is a contract; it is an agreement not to do. Mrs. Dimitry agrees not to enforce her mortgage, to the prejudice of Zoits, a creditor of her husband. If he enjoyed the right of being first paid out of the property mortgaged, he derives that right from this agreement or contract; and the object of this proceeding is, to enforce it. It has been said that, like a receipt for a sum of money, this agreement gives rise to no legal obligations on the part of Mrs. Dimitry. It certainly conferred a legal right on Zoits which he did not possess without it, and by means of which his debt was more amply secured. She does not bind herself personally to pay the debt, it is true; but it is not of the essence of suretyship that the obligations of the principal and the surety should be co-extensive. If A consents that B may mortgage the former's land, to

*It is not of the essence of suretyship, that the obligations of the principal and surety should be co-extensive. If the wife renounce her right of mortgage, and cede it in favor of her husband's creditor, she becomes surety for a debt of her husband's contracting, so far as her interest in the mortgaged property is concerned.*

EASTERN DIST.
June, 1836.

GASQUET ET AL.
vs.
DIMITRY.

secure the payment of a debt personal to the latter, in what relation do they stand to each other? If Mrs. Dimitry, instead of ceding her precedence, had consented to the pledge of certain evidences of debt due to her personally, to guaranty the payment of Zoits's claim, will it be contended that she did not become *pro tanto* surety, for her husband? Will it be said, that she did not bind herself to a certain extent for a debt of her husband's contracting?

It has been said, that the wife may sell her own paraphernal property, and nothing prevents her from paying a debt of her husband out of the proceeds. It is not so clear, that in such a case she might not recover back from her husband's creditor money paid under such circumstances; money which she did not owe, and which she could not validly promise to pay. The Roman law is not now in force; but the *Senatus Consultum Velleianum* is the original fountain of our legislation on this subject, and it applied to all contracts and engagements whatever. As relates particularly to mortgages and sales, the *Senatus Consultum* gave the wife, who had pledged her own property to a creditor of her husband, a right to recover it back, although it had been sold by the creditor; and Pomponius teaches us that, if a woman, who has sold an immoveable to a creditor of the husband, having delivered it on condition that he should impute the price to the husband's debt, should sue for the property, he might, indeed, set up the sale as an exception, but she would be permitted to reply that the sale was in contravention of the *Senatus Consultum,* whose dispositions apply to the case. *Pandects, law 16, title 1. Pothier's Pandects.*

The marginal note: *The senatus consultum velleianum of the Roman law, is the fountain of our legislation in relation to the rights of married women. As relates to mortgages and sales, the senatus consultum gave the wife, who had pledged her own property to a creditor of her husband, the right to recover it back, although it had been sold by the creditor.*

The article of our code in question, is full and comprehensive in its language, and, in my opinion, intended to prevent married women from intervening in any manner in the contracts between the husband and his creditors, by which their rights might be ultimately affected to their prejudice. So long as they enjoy those immunities by law, and labor under those disabilities, they are entitled to the protection of courts of justice.

EASTERN DIST.
June, 1836.

GASQUET ET AL.
vs.
DIMITRY.

*Martin, J.,* dissenting.

I cannot consider the lien which a wife has on the husband's estate, as an advantage which she is not at liberty to renounce, because it was introduced for the support of public order. As early as in the fourteenth century, as appears by a law of the Partidas, the obstacle which was opposed by this lien to the alienation of real property, was considered so intolerable that wives renounced it. This the legislator mentions not in terms of disapprobation, but as a measure which it was proper to encourage and facilitate. Accordingly, the form of a wife's renunciation was established by law. See *Partida, 3, title* 18, *law* 58.

This was several centuries before the laws of Spain were introduced into Louisiana. From that early period, till the year 1828, the constant jurisprudence of Spain and Louisiana recognised and supported the right of the wife to renounce her lien.

One solitary commentator appears to have called this in question in Spain. In Louisiana, I am not aware that it ever was doubted. I, therefore, find it impossible to assent to the proposition, that a right which for centuries has received the countenance and support of the legislature and courts of justice, can at this late period be declared by the judiciary power to be derogating from good morals and sound policy, unless the late change in our laws by the repeal of the Spanish law, imperiously demands a decision adverse to the right.

It is said it does, because, as the right of renouncing was given by the law of the Partidas, cited, the repeal of that law must abrogate the right.

I conceive that law of the Partidas, not as introducing a new principle, but as declaratory, or recognitive of an ancient one. The preamble recites that wives at times consented to the alienation of the real estate of their husbands, and the legislator publishes a form thereafter to be used in such cases. This is a legislative recognition, that the renunciation of the wife was a legitimate act, not at all derogatory of good morals or sound policy.

EASTERN DIST.
*June*, 1836.

GASQUET ET AL.
*vs.*
DIMITRY.

The repeal of the law of the Partidas, cited, leaves, in my opinion, the matter as it stood before the law was enacted ; and as the right has been recognised for centuries, as compatible with good morals and sound policy. I have no data from which I may infer that it was otherwise before. I am aware of the Roman maxim : *Interest rei publicæ ut mulier in dotata non remaniat.* But nothing authorises me to conclude that it ever was introduced as a part of the Spanish law, or that if it ever was, it has been abrogated by the general repeal of those laws in Spain.

On the repeal of the Spanish law in this state in 1828, some members of the bar expressed a doubt in regard to the renunciation of wives after that period. About this time, an immense increase of banks and banking capital took place, and the gentlemen employed to prepare drafts of bills of incorporation, thought it prudent to provide for the removal of every scintilla of doubt as to the renunciation of wives ; and in every charter for a bank granted thereafter, this prudent clause has been inserted. It is likely that I labor under an error in this respect, since I differ from the opinion of the court ; but the conduct of the legislature has appeared to me an evidence of their considering the renunciation of wives as perfectly consonant with good morals and sound policy. For if it were otherwise, why should they open so many doors, or multiply the facilities to the commission of acts destructive of morality and the good of society ? What is the difference between a wife beggaring herself by aiding her husband in borrowing from a bank or from a capitalist ? I admit that the sole circumstance of the legislature authorising renunciations, might be considered as a mere relaxation of an admitted general principle ; but the genius of the American people, the vast extension of commerce and universal practice, repel the idea that these renunciations are viewed by the people as immoral or impolitic.

If a farther illustration of this be necessary, we have a forcible one in the conduct of the legislature, when this tribunal announced its opinion on the first hearing in the

present case. An electric panic suddenly pervaded the community, and created a general sentiment of alarm and insecurity. As in desperate cases, desperate remedies are resorted to, a bill was introduced before the judgment of this court could have become final, if it had not been prevented by an application for a re-hearing.

This bill is evidence of the excitement under which it was received and enacted. The general assembly rebuilt what they thought this court had pulled down. On this part of the case, I conclude the District Court did not err in considering the right of wives to renounce, as one established for their benefit alone, and which, consequently, they are at liberty to waive.

It remains to examine, whether this renunciation be forbidden by the article of the Louisiana Code, which forbids a wife to bind herself with or for her husband.

It is said it does; because, by renouncing, she *binds* herself not to claim what she has renounced. I believe this a very forced construction. Our code enumerates the modes of *creating*, and of *extinguishing* obligations. *Payment* and *release* are not found among the former, but among the latter. A release and renunciation are not similar, but identical. Yet if the proposition contended for be correct, payment and release, or renunciation, are the means of creating obligations.

If A and B be the debtors of C, and he receives the debt from A, and releases that of B, he binds himself to A not to demand the money he has received, and to B, not to claim the debt he released or renounced.

He who receives or releases what is due him, is not bound to forbear asking for what he has released or received, more than he is bound to forbear asking what never was due him.

It is true, the deed by which payment is acknowledged, or the release or renunciation made, may, and does very often contain a clause by which the former creditor promises never to claim again; but such a clause is merely one of style : I say, the release or renunciation may be effected by an

engagement never to claim. In such a case, it is a mere <span style="float:right">EASTERN DIST.</span>
release. I admit that one may beggar himself as easily by <span style="float:right">*June,* 1836.</span>
renouncing a right as by creating an obligation. But these <span style="float:right">GASQUET ET AL.</span>
<span style="float:right">*vs.*</span>
means are not *identical,* but *similar; similis non idem.* <span style="float:right">DIMITRY.</span>

The first is necessarily limited, the other is not so. The
release cannot exceed the right : the obligation may be
beyond the means.

The Louisiana Code went into effect in 1825 ; between
that year and 1828, it never was imagined that the article
prohibiting a wife to bind herself with or for her husband,
prevented her renunciation. It cannot be denied that the
opinion that the repeal of the laws of Spain did not abrogate
the wife's right of renouncing her tacit mortgage, was almost
universal ; that there is neither a notary in the city, nor a
parish judge in the country, who was not in the habit before
the decision of this tribunal, in the present case, of receiving
acts of renunciation.

The extraordinary means resorted to by the legislature to
release the people from the danger attending the principles
which the reversal of the judgment of the District Court will
create, is to me a convincing proof that they thought their
intention had been mistaken by this tribunal.*

I am of opinion the judgment ought to be affirmed, with
costs.

---

*An Act to limit the time in which married women, aged above twenty-one
years, may retract renunciations made by them in favor of third persons, of their
matrimonial, dotal, paraphernal and other rights; and to authorise them in
future to make valid renunciations.

SECTION 1. *Be it enacted, by the Senate and House of Representatives
of the State of Louisiana, in General Assembly convened,* That all married
women, aged above twenty-one years, who, with the consent of their husbands,
have, by act passed before a notary public, voluntarily renounced, in favor of
third persons, the mortgage which they had for the restitution of their matrimo-
nial, dotal, paraphernal and other rights, shall have the right of retracting the
said renunciations during only the forty days which will follow the promulgation
of the present act, all laws or parts of laws, to the contrary notwithstanding.

SECTION 2. *Be it further enacted, etc.,* That from and after the promulgation
of this act, married women aged above twenty-one years, shall have the right,

EASTERN DIST.
*June,* 1836.

GASQUET ET AL.
*vs.*
DIMITRY.

renounce, in favor of third persons, their matrimonial, dotal, paraphernal and other rights ; *provided,* that the notary public, before receiving the signature of with the consent of their husbands, by act passed before a notary public, to any married woman, shall detail in the act, and *explain verbally* to said married woman, out of the presence of her husband, the nature of her rights, and of the contract she agrees to.

SECTION 3. *And be it further enacted, etc.,* That all laws and parts of laws, contrary to the provisions of this act, be and are hereby repealed.

*Approved March 27, 1835.*